## In re Floyd Wayne TUCKEY, SSN: 455–90–7438, Debtor.

### Bankruptcy No. 198–102.

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

July 22, 1998.

Nelson Quinn, Abilene, TX, for Floyd Tuckey.

William S. Parkinson, Office of U.S. Trustee, Dallas, TX, United States Trustee.

Walter O'Cheskey, Lubbock, TX, Chapter 13 Trustee.

## MEMORANDUM OF OPINION ON ORDER TO SHOW CAUSE

JOHN C. AKARD, Bankruptcy Judge.

On July 7, 1998, the court conducted a hearing at which Floyd Wayne Tuckey had been ordered to appear and show cause why he should not be sanctioned for multiple bankruptcy filings. All creditors were invited to appear and present evidence of the damages which they suffered as a result of Mr. Tuckey's multiple filings. No creditors having presented evidence of such damages, no sanctions will be assessed against Mr. Tuckey.[1]

### FACTS

#### First Case

Mr. Tuckey filed several bankruptcy proceedings in the Abilene Division of the United States Bankruptcy Court for the Northern District of Texas. On February 1, 1994, he filed for relief under Chapter 13 of the Bankruptcy Code in case number 194–10038 (First Case). The only debt scheduled was to American Mortgage and Investment Company (American Mortgage) secured by a lien on his home which Mr. Tuckey valued at $35,000.00. American Mortgage filed a claim

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A).

as agent for the Federal National Mortgage Association (FNMA) which stated that the principal balance due on the note was $19,357.05 and that the total arrearage (including fees in connection with a proposed foreclosure) was $3,426.62. The Internal Revenue Service (IRS) filed a claim for 1990 federal income taxes and estimated liability for 1991, 1992, and 1993 federal income taxes totaling approximately $9,000.00. FNMA filed a motion to be relieved from the automatic stay. On July 1, 1994, Mr. Tuckey and FNMA agreed to an order conditioning the automatic stay which gave him an opportunity to catch up the delinquent payments. On July 27, 1994, FNMA filed a notice that Mr. Tuckey had defaulted under the terms of the agreed order and gave him ten days to cure the default. On August 10, 1998, FNMA filed a certificate that Mr. Tuckey had not cured the default. After due notice, the court dismissed the case on November 18, 1994 because Mr. Tuckey had not made the payments which he was required to make under the Chapter 13 plan.

## Second Case

On June 5, 1995, Mr. Tuckey filed for relief under Chapter 13 of the Bankruptcy Code in case number 195–10140 (Second Case). The schedules listed FNMA with a lien on the Debtor's homestead which he valued at $28,000.00. The Debtor also scheduled obligations to the IRS in the amount of $2,000.00, to Discover Card for $2,900.00, and to Montgomery Ward for $4,100.00. FNMA filed a claim indicating a principal balance due of $19,357.05 and an arrearage of $7,767.80. Claims were filed by Discover Card for $1,894.67, the IRS for $14,647.53, and Montgomery Ward on a judgment for $5,277.10. The IRS filed an amended claim seeking only $3,475.93. On July 2, 1996, Mr. Tuckey and Commercial Federal Mortgage Corporation (Commercial Federal) as servicing agent for FNMA entered into an order conditionally modifying the stay. The order recited that the Debtor was delinquent in postpetition mortgage installments in the amount of $1,937.56. The case was dismissed on August 2, 1996 because Mr. Tuckey was not employed and could not make payments into the Chapter 13 plan.

## Third Case

On December 3, 1996, Mr. Tuckey filed for relief under Chapter 13 of the Bankruptcy Code in case number 196–10887 (Third Case). The schedules indicated that Mr. Tuckey's home was posted for foreclosure on the day he filed the petition. The schedules listed the FNMA as holding a lien on Mr. Tuckey's homestead which he valued at $30,000.00. The IRS, Discover Card, and Montgomery Ward were listed as creditors for the amounts scheduled in the previous case. Commercial Federal filed a claim stating that the total pay-off of the loan was $28,441.12 which included a principal balance of $18,787.96. The total necessary to reinstate the loan was stated to be $11,833.48. The claim indicated that there were 32 delinquent monthly payments. The IRS, Montgomery Ward and Discover Card filed claims. The court dismissed the case on March 7, 1997 because Mr. Tuckey did not make the first payment into the Chapter 13 plan.

## Fourth Case

On May 5, 1997, Mr. Tuckey filed for relief under Chapter 13 of the Bankruptcy Code in case number 197–10396 (Fourth Case). Commercial Federal was scheduled as holding a lien on Mr. Tuckey's home which he valued at $18,000.00. The only other creditor scheduled was the IRS for $281.00. Commercial Federal filed a claim showing a total pay-off of $28,277.38 including an unpaid principal balance of $18,787.96. Total arrearages were listed at $12,359,07. The claim indicated that Mr. Tuckey was 37 months in arrears on his mortgage payments. The IRS filed a claim for $19,759.74. On July 25, 1997, the case was dismissed because Mr. Tuckey failed to make the first payment into the Chapter 13 plan.

## Fifth Case

On November 3, 1997, Mr. Tuckey filed for relief under Chapter 13 of the Bankruptcy Code in case number 197–10968 (Fifth Case). Commercial Federal was scheduled as holding a lien on Mr. Tuckey's homestead which he valued at $42,000.00. The only other creditor scheduled was Hendrick Medical Center for $357.75.

Because of the numerous filings by Mr. Tuckey, the court on November 12, 1997 issued a notice to Mr. Tuckey to appear before the court on December 2, 1997 to show why the current case should not be dismissed. The notice stated "Creditors who wish to participate in this hearing will be permitted to do so." Due notice was given to the creditors listed in this case including Commercial Federal. When the matter was called for hearing on December 2, 1997, no creditor appeared. Mr. Tuckey stated that he was now employed and felt he could make payments under a Chapter 13 plan. In view of the fact that no creditor appeared to oppose Mr. Tuckey's fifth Chapter 13 case, the court found that it had no alternative but to allow the case to proceed.

On December 17, 1997, Commercial Federal filed a claim which stated that at the time of the bankruptcy filing the total pay-off was $29,576.20 which included unpaid principal of $18,787.96. The total arrearage was $14,-610.01. The mortgage was 42 months delinquent.

The Trustee's report of the meeting of creditors showed that neither Mr. Tuckey nor his attorney appeared. No creditors attended that meeting. Because of Mr. Tuckey's failure to attend the meeting of creditors and because of his prior filings, the court dismissed the case with prejudice to refiling for a period of 180 days from January 29, 1998.

### Sixth Case

On June 3, 1998, Mr. Tuckey attempted to file another proceeding under Chapter 13 of the Bankruptcy Code (Sixth Case). In view of the fact that the petition was tendered less than 180 days after the dismissal of the prior case, the court instructed the Clerk not to file it. The list of creditors tendered with that petition included the IRS, Commercial Federal, Linstar Construction Company, and Renters Choice.

This record shows that for several years Mr. Tuckey had possession and use of the house in question, but that he paid few, if any, mortgage payments. In spite of that fact, the holder of the mortgage made no attempt to object to Mr. Tuckey's repeated filings.

On June 10, 1998, the court issued an order to show cause to Mr. Tuckey instructing him to appear before the court on July 7, 1998 to show cause why he should not be sanctioned for his attempted violation of this court's order. The notice stated "All creditors and parties in interest are invited to appear and be heard at that hearing and to present to the court evidence of damages which they suffered as a result of Mr. Tuckey's violation of this court's order." When the matter was called for hearing, Mr. Tuckey did not appear. Representatives of two small creditors appeared who indicated they had not been damaged by Mr. Tuckey's violations of the court order. Commercial Mortgage did not appear. The attorneys who represented Mr. Tuckey in the Fifth and Sixth cases appeared to describe their efforts to try to assist him and his failure to cooperate with them.

During his six bankruptcy cases, Mr. Tuckey was represented by four different attorneys. The petitions which he filed failed to list all of his prior bankruptcy cases and, apparently, only made selective listings of his creditors. The creditors who appeared at the show cause hearing stated that the house had been foreclosed upon and that Mr. Tuckey had left Abilene, Texas.

### WHERE, OH WHERE, HAVE THE CREDITORS GONE?

According to press reports, creditors complained bitterly to the National Bankruptcy Review Commission that they were being unfairly harassed by repeat filings, particularly repeat filings of Chapter 13 cases. In an attempt to be sensitive to those concerns, this court, at about the same time it issued the notice to show cause in Mr. Tuckey's Fifth Case, issued similar notices to show cause in four other bankruptcy cases representing repeat filings within a few months after dismissal of a prior case. In each case creditors were invited to appear and participate at the hearing. Notice was sent to all creditors in each case. In one case, no creditors appeared and the debtor did not appear; the court dismissed that case. In the other cases, the debtor appeared and offered a reasonable explanation for the repeat filing. No creditors appeared in any of the cases. Thus, in the five cases in which the court

issued a notice to show cause, not one creditor appeared to complain. In more than twelve years as a United States Bankruptcy Judge, this court cannot recall one instance of a creditor objecting to a repeat filing by a debtor.

## CONCLUSION

What conclusion should the court draw from the total lack of creditor participation in repeat filings? The only conclusion the court can draw is that creditors are not concerned about repeat filings. If creditors are not concerned about repeat filings, should the court be concerned about them? I think not. The court has heretofore had the Bankruptcy Clerk's office furnish copies of the docket sheets in each case involving repeat filings. Copies of those docket sheets have been sent to the appropriate case trustee with instructions to carefully review the case and if the current case is dismissed, to suggest that it be dismissed with prejudice for 180 days. In view of the creditors' lack of interest in this subject, the court will no longer engage in that activity. With ever-increasing dockets, the clerk's office, the trustees, and the court have more than enough significant matters to occupy their time.

ORDER ACCORDINGLY.[2]

---

**2.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.BANKR.P. 7052 which is made applicable to Contested Matters by FED.R.BANKR.P. 9014. This Memorandum will be published.